AVONDALE INDUSTRIES, INC.,
Plaintiff–Appellant,

v.

NATIONAL LABOR RELATIONS
BOARD, et al., Defendants–
Appellees.

No. 94–30729.

United States Court of Appeals,
Fifth Circuit.

July 25, 1996.

Joan M. Canny, Keith M. Pyburn, Jr., Stefanie J. Allweiss, Horace A. Thompson, III, McCalla, Thompson, Pyburn, Hymowith & Shapiro, New Orleans, LA, for appellant.

Mark Gisler, Margey E. Lieber, U.S. Dept. of Justice, Washington, D.C., Mark J. Kaplan, N.L.R.B. Region 15, New Orleans, LA, for appellees.

Before SMITH, WIENER and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Appellant Avondale Industries, Inc. appeals from a final order and judgment of the United States District Court for the Eastern District of Louisiana which denies Avondale's motion for summary judgment and grants the National Labor Relation Board's cross-motion for summary judgment, holding that documents sought by Avondale are protected under an exemption to the Freedom of Information Act, 5 U.S.C. § 552(b)(6). For the following reasons, we REVERSE.

## FACTS AND PROCEDURAL HISTORY

In June 1993, the National Labor Relations Board ("NLRB") held an election at Avondale Industries, Inc. ("Avondale"), a ship-building company, to determine whether certain Avondale employees wanted the New Orleans Metal Trades Council, AFL–CIO (the Union) as their collective bargaining representative. The election, which involved approximately 4,000 employees voting at five

polling locations, was conducted pursuant to an election agreement between the parties and NLRB election procedures. Per the agreement, the employees were instructed to vote at one of five assigned polling "zones."

Each of the five voting zones had two voting lists: one "zone list" of employees who were instructed to vote at that particular zone, and a second "master list" of the names and addresses of all employees who were eligible to vote.[1] Pursuant to NLRB procedures, when individual voters presented themselves to vote at their assigned polling locations, election observers made a mark on the zone list beside the voter's name, either with both a small red and blue line,[2] or the letter "C."[3] The initial vote count after the election showed 1,804 votes in favor of union representation and 1,263 votes against union representation.[4]

After the election, Avondale invoked the Freedom of Information Act ("FOIA") and requested the Acting Regional Director of the NLRB to provide access to: (1) the marked and unredacted master voting list from the vote count;[5] (2) the marked and unredacted master voting lists and zone voting lists for each polling place; and (3) each written "Form 5126" list kept by NLRB agents on election day, tallying the "for cause" and "Not–on–List" challenges.[6] The regional director denied Avondale's request, claiming that the documents were exempt from disclosure under FOIA Exemptions 6, 7(A), and 7(C).[7] Avondale's administrative appeal of the regional director's refusal to disclose the requested information was denied.

Avondale filed a complaint in federal district court, seeking injunctive relief and the production of the documents. The NLRB responded that Avondale was not entitled to the documents and claimed the above FOIA exemptions as affirmative defenses. Avondale moved for summary judgment and the NLRB filed an Opposition and Cross–Motion for Summary Judgment. After hearing oral arguments on the motions, the district court ruled from the bench and granted the NLRB's cross-motion for summary judgment and denied Avondale's motion for summary judgment. The district court stated that this case was a "very close call," that the court "had problems with [Exemption] 7 because of its broadness," and that this was not "one of those cases which involves a categorical exemption." Nevertheless, based upon a balancing of the public's right to the information sought, versus the private individuals' right to privacy, the district court held in favor of the NLRB and concluded that the marked voting lists were exempt under FOIA Exemption 6. Avondale filed a notice of appeal.

## STANDARD OF REVIEW

 The parties dispute which standard of review should be applied in this appeal. Avondale asserts that we should review this grant of summary judgment *de novo*. The

---

1. These lists were prepared by Avondale for the election and contained the last name, first and middle initials, and addresses of all Avondale employees in undisputed job classifications.

2. The blue line indicated the identification and unchallenged status of the voter by both an Avondale observer and a Union observer.

3. The letter C indicated that the voter had been challenged for cause by either a NLRB agent or an observer. A "challenged" voter was permitted to vote, but his ballot was placed in a "challenged" envelope which identified both the voter and the basis for the challenge.

4. Following the election, the NLRB conducted a hearing concerning challenged ballots (there were 850 "challenged" ballots) and post election objections. The Hearing Officer issued an interim report in February 1994, finding that 301 of

the challenged ballots should be opened and counted. In addition, a trial before an administrative law judge began in July 1994 to address four unfair labor practice complaints based upon approximately 60 unfair labor practice charges filed by the Union against Avondale. The NLRB also reported that a second set of four complaints alleging new allegations was issued against Avondale.

5. The NLRB informed Avondale that this list did not exist.

6. According to the NLRB, the Form 5126 list (listing the remaining challenged ballots or impounded ballots) included virtually the same information as that contained on the face of the challenge ballot envelopes.

7. In September 1994, the NLRB released the NLRB 5126 forms to Avondale.

NLRB argues that because this action stems from a Freedom of Information Act claim, the standard of review is whether the district court's action was clearly erroneous.

Avondale is correct. "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden on the agency to sustain its action and directs the district courts to determine the matter de novo." *United States Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 755, 109 S.Ct. 1468, 1472, 103 L.Ed.2d 774 (1989) (internal citations omitted). "Congress vested the courts with the responsibility ultimately to determine 'de novo' any dispute as to whether the exemption was properly invoked in order to constrain agencies from withholding nonexempt matters." *Dept. of the Air Force, Et Al. v. Rose, Et Al.*, 425 U.S. 352, 379, 96 S.Ct. 1592, 1607, 48 L.Ed.2d 11 (1976).

In *Halloran v. Veterans Administration*, we reviewed *de novo* a grant of summary judgment that was based, "not upon the unique facts of [the] case, but upon categorical rules regarding what does and does not constitute an invasion of privacy for FOIA purposes." *Halloran v. Veterans Administration*, 874 F.2d 315, 320 (5th Cir.1989). In the instant case, the parties do not dispute the relevant facts. What the parties do dispute is whether particular documents categorically fit within one of FOIA's prescribed exemptions. As we discussed in *Halloran*, this is a question of law to which the district court is not entitled deference. Because Avondale appeals a grant of summary judg-

ment which was based upon the court's legal conclusion regarding the applicability of an FOIA exemption, our standard of review is *de novo. See also, Voinche v. Federal Bureau of Investigation*, 999 F.2d 962 (5th Cir. 1993) (holding in Freedom of Information Act suit that "[s]ummary judgment is reviewed *de novo*, under the standards the district court applies to determine whether summary judgment is appropriate.").

## DISCUSSION

■ The question presented is whether the marked, unredacted voting lists [8] are exempt from disclosure under Exemptions 6, 7(A), and 7(C) of the Freedom of Information Act, 5 U.S.C. § 552.[9] For the following reasons, we hold that they are not.

"The Freedom of Information Act was enacted to facilitate public access to Government documents. The statute was designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *United States Department of State v. Ray, Et Al.*, 502 U.S. 164, 173, 112 S.Ct. 541, 547, 116 L.Ed.2d 526 (1991) (internal citations omitted). "This basic policy of full agency disclosure unless information is exempted under clearly delineated statutory language, indeed focuses on the citizens' right to be informed about what their government is up to." *Halloran v. Veterans Administration*, 874 F.2d 315 (5th Cir.1989) (internal citations omitted). As further stated in *Halloran*,

[a] corollary to this principle is that, because our focus must be upon whether

---

8. The information contained in the marked, unredacted voting lists ("marked lists") consisted of the names and addresses of all Avondale employees who were in undisputed job classifications, as well as the marks identifying which of the those employees presented themselves for voting at the representation election.

9. The relevant portions of Exemptions 6, 7(A), and 7(C) read as follows:

This section does not apply to matters that are—
(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, ... [or] (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.

5 U.S.C. § 552(b). These exemptions, as well as all enumerated exemptions under § 552, are permissive rather than mandatory. It is within an agency's discretion to disclose exemptible materials. *See Superior Oil Co. v. Federal Energy Regulatory Commission*, 563 F.2d 191 (5th Cir. 1977); *Pennzoil v. Federal Power Commission*, 534 F.2d 627 (5th Cir.1976).

disclosure serves the general public's interest in governmental affairs, the specific motives of the party making the FOIA request are irrelevant. If the general public has a legitimate, albeit abstract, interest in the requested information such that disclosure is warranted, disclosure must be made despite the fact that the party actually requesting and receiving the information may use it for less-than-lofty purposes.

Conversely, if disclosure of the requested information does not serve the purpose of informing the citizenry about the activities of their government, disclosure will not be warranted even though the public may nonetheless prefer, albeit for other reasons, that the information be released.

*Halloran,* 874 F.2d at 323. Within this framework, the court must balance the individual's right of privacy against the basic policy of opening an agency's action to the light of public scrutiny. *Ray,* 502 U.S. at 175–77, 112 S.Ct. at 548.

*Exemption 6*

▇▇ To specifically prevail under Exemption 6, the government must establish that the invasion of the voters' privacy would be clearly unwarranted. *Ray,* 502 U.S. at 171–73, 112 S.Ct. at 546. Exemption 6 does not protect against disclosure of every incidental invasion of privacy, but only those disclosures which constitute clearly unwarranted invasions of privacy. *Rose,* 425 U.S. at 380–84, 96 S.Ct. at 1608–09. Redaction as a means of protecting a private individual's interests is permissible, so long as it is utilized only to the extent necessary to prevent a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(a)(2); *Rose,* 425 U.S. at 380–84, 96 S.Ct. at 1608–09. Thus, an agency may delete identifying details within a document, provided that the details sought to be deleted are reasonably segregable and the overall privacy interests of the individual clearly outweigh the presumption of public disclosure. See, *Reporters Committee,* 489 U.S. at 765–67, 109 S.Ct. at 1478.

We must, therefore, ask whether the NLRB has discharged its burden of demonstrating that the non-disclosure of the marked voting lists meets the statutory purpose of the FOIA, and whether the disclosure of voter attendance information would constitute a clearly unwarranted invasion of the voters' personal privacy. *Ray,* 502 U.S. 164, 173–75, 112 S.Ct. 541, 547 (1991). For the following reasons, we hold that the district court erred in finding that disclosure of the unredacted documents would constitute a clearly unwarranted invasion of the voters' privacy.

Ruling from the bench, the district court held that the unredacted voting lists were entitled to exemption pursuant to Exemption 6. The court's oral ruling, in its entirety, is as follows:

> While this court considers this to be a very close call, I'm called upon by the law to do a balancing test here, and I think I have to weigh the privacy interests of the individual involved here against the right to know here with respect to the agency.
>
> It is questionable as to how much information is going to be obtained as to the actions of the agency involved here, so, I'm going to yield to the privacy interests here and invoke or allow the NLRB to invoke Exemption 6 here.
>
> I have problems with 7 because of its broadness, and I certainly don't think that this is one of those cases which involves a categorical exemption.
>
> So, I believe that the analysis under Exemption 6 would apply here, and based upon that, I'm going to grant the NLRB's motion for summary judgment and deny Avondale's motion for summary judgment.

The district court did not enter a written order.

Given the brevity of the district court's ruling, it is uncertain what standard the district court applied and what law guided its decision. Nevertheless, we must base our review upon what little is before us. Doing so, we conclude that the district court did not apply the correct standard.

Federal regulations state that, "[t]he formal documents constituting the record in a case or proceeding are matters of official record and ... are available to the public for inspection...." 29 C.F.R. § 102.117(b)(1).

However, Exemption 6 states that personnel files, medical files, and similar files need not be disclosed if disclosure would constitute a *clearly unwarranted* invasion of personal privacy, 5 U.S.C. § 552(b)(6). To determine whether disclosure of such files would constitute a clearly unwarranted invasion of personal privacy, Exemption 6 cases require a balancing of the individual's right of privacy against the preservation of the basic purpose of FOIA, which is to open agency action to the light of public scrutiny. *Rose,* 425 U.S. at 370–75, 96 S.Ct. at 1604–1605; *United States Department of Defense, Et. Al., v. Federal Labor Relations Authority,* 510 U.S. 487, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994). Importantly, the burden is upon the government to establish that the invasion of privacy would be clearly unwarranted. *Ray,* 502 U.S. at 171–73, 112 S.Ct. at 546.

The district court was correct in asserting that it was required to balance the privacy interests of the individuals versus Avondale's interest in the information as a member of the public. The district court's oral statement, however, fails to recognize that the burden is on the government to establish that the invasion of privacy is clearly unwarranted. It is against this backdrop that we must review, *de novo,* the NLRB's failure to disclose the unredacted voting lists. For the following reasons, we hold that the NLRB has not met its burden.

The NLRB correctly asserts that, to determine whether disclosure of the marked voting lists would constitute a clearly unwarranted invasion of personal privacy, it must first be determined whether the voters (employees) named in the voting lists have a viable privacy interest. The NLRB argues that they do. Specifically, the NLRB argues that the employees' privacy interests include: "their names and home addresses, identification as members of a specialized group of shipbuilding employees, and information indicating who voted and who did not vote in the representation election." The NLRB argues that "the nature of the threatened invasion of these employees' privacy interests if the Voting Lists are disclosed includes: receiving unwanted mail at their homes from marketers or others, creating an atmosphere of surveillance over employees' voting activities, possible intimidation or retaliation in response to employees' voting activities, embarrassment in having it known whether or not they voted, and the likelihood of direct contact with employees by persons seeking to independently verify the information in the Voting Lists." The NLRB adds that public dissemination of voters' names would "chill" future voting.

As for the public's interest in the marked voting lists, the NLRB argues that there is none. Specifically, the NLRB argues that there is minimal, if no, public interest in disclosure of the marked voting lists because such disclosure in no way contributes significantly to the public's understanding of the operations or activities of the government. The NLRB argues that the alleged public interest "boils down to a desire to monitor the Board's election procedures," and that one's desire to merely monitor the government is not enough. Furthermore, the NLRB argues that Avondale's "proposed public purpose relies entirely on inferences it hopes to draw from the Voting Lists about the election and the Board. . . ."

Avondale disagrees and contends that attendance at a government-sponsored election is a quintessentially public act, and that neither the law, nor the standards of the community, consider the act of participation—as distinguished from the content of one's vote—to be a private matter. Avondale also argues that the marked voting lists are official information, the disclosure of which will "shed light on the NLRB's performance of its statutory duty to conduct representative elections." Specifically, Avondale argues that it has reason to believe that "imposters" were voting in the place of eligible voters who did not appear to vote. Avondale also says that it has evidence which gives it reason to believe that, in some instances, there was multiple voting by individuals, and that some eligible voters were turned away because the voting lists indicated that they had already voted when they had not. Avondale believes that lists of Union "opponents" were reviewed and given to Union election observers so that the observers could challenge Union opponents who appeared to vote.

Avondale argues that it needs the marked voting lists so that it can compare the marks on the lists with the post-election testimonies of individuals who say that they appeared, or did not appear, to vote at the election. For the following reasons, we hold that the NLRB has not met its burden of showing that disclosure of the marked voting lists would constitute a clearly unwarranted invasion of personal privacy.

Having determined that the voters do not have a viable privacy interest in the marked voting lists, we must next decide whether the files at issue are "personnel," "medical," or "similar" files. Petitioner argues that the marked voting lists are similar files for purposes of Exception 6. Assuming that petitioner is correct, we must identify the relevant privacy interests in nondisclosure and the relevant public interests in disclosure.

The record shows, and the parties do not dispute, that the NLRB has already disclosed the names and addresses of the voters. The voting lists from the Avondale election, including the names and addresses of eligible voters (but not containing the attendance markings), were made a part of the NLRB's public file in late 1993; these files have long been available to any member of the public for inspection. While we acknowledge that, in certain circumstances, public records may be so voluminous and cryptic as to effectively conceal the information sought, therein, *see Reporters Committee*, 489 U.S. 749, 109 S.Ct. 1468 (1989), the NLRB has offered no evidence showing that such is the situation in this case. The NLRB merely asserts that the NLRB case record consists of "15,000 pages of testimony and hundreds of exhibits." The NLRB fails to describe how this record is organized, or how its organization (or lack thereof) would effectively obscure the public's ability to access the information contained therein. As the Supreme Court stated in *Reporters Committee*, "the issue here is whether the compilation of otherwise hard-to-obtain information alters the privacy interest implicated by the disclosure of that information." *Reporters Com-*

*mittee*, 489 U.S. at 764, 109 S.Ct. at 1476. Without a specific showing that this voluminous public record is compiled in such a way as to alter the privacy interests of the individuals involved, we cannot hold that the publicly disclosed information found, therein, is effectively obscured.[10]

Additionally, the NLRB has offered no authority showing that voters have a privacy interest in the mere fact of their attendance at an election. It is undisputed that voters have a privacy interest in the content of their vote. But disclosure of the ballot content is not being sought. All that Avondale seeks is disclosure of who attended the vote, vis-a-vis the marked voting lists. Because Avondale is not seeking disclosure of the ballots, or anything which might reveal their contents, the only privacy interest at stake pertains merely to the attendance marks. The NLRB's assertion that the disclosure of these attendance lists will chill future voting is purely speculative, completely unsupported, and highly improbable. The NLRB has offered no evidence showing that individuals who are identified as voters in past elections are less likely to vote in future elections.

Furthermore, balanced against the voters' minimal interest in keeping the attendance marks private, we hold that the marked voting lists serve a more compelling public interest by giving Avondale, as a member of the public, the information which it needs to determine whether the NLRB is properly conducting its elections. Because federal law requires that the NLRB "shall direct an election by secret ballot and shall certify the results thereof," 29 U.S.C. § 159(c)(1), Avondale has a legitimate and significant interest in the NLRB's exercise of its statutory duty to certify such election results.

Even the NLRB concedes the significance of the marked voting lists. In its brief before this Court, the NLRB states: "Disclosure of the Marked Voting Lists, when compared to other lists of employees or challenged ballots, would confirm whether

---

**10.** For example, a compilation of encyclopedias may also contain "15,000 pages" and "hundreds of exhibits," but it can hardly be said that the information contained therein is so obscured as to be effectively concealed from the reader. To the contrary, encyclopedias are alphabetized, indexed, and arranged in such a way as to make their information easily accessible.

particular employees voted and where they voted, and may indicate possible fraudulent voting conduct." The NLRB goes on to say that "[s]uch information however, concerns only the voting behavior of private citizens and not the procedures or actions of the Board in organizing and conducting the election...." We disagree.

If Avondale's suspicions of fraud and corruption are true, the disclosure of the marked voting lists will likely enable Avondale to prove such allegations. It is axiomatic that, to prove voter fraud, you must know who voted. Knowing who voted at an election, and whether such people were entitled to vote as they did, is fundamental to any understanding of the propriety of the electoral process. It is disingenuous for the NLRB to argue that evidence of fraudulent and corrupt election proceedings only concern the voting behavior of private citizens and not the actions of the NLRB. When an election is allowed to be tainted, the actions of the organizers and overseers of the election are certainly of concern. In the words of the Supreme Court, "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corporation,* 493 U.S. 146, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989), *citing, NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978). No more important role can be served by the Freedom of Information Act than working to ensure the propriety of government directed elections.

We have no doubt that the public's interest in monitoring NLRB sponsored elections meets FOIA's central purpose of opening agency action to public scrutiny. We hold that the NLRB has not met its burden of showing that disclosure of the marked lists would be clearly unwarranted. Because we find that the public's interest in obtaining the unredacted voting lists is significant, and that the relevant privacy interest in keeping such lists undisclosed is negligible, we hold that Exemption 6 of the Freedom of Information Act is not applicable.

*Exemptions 7(A) & (C)*

■ In the alternative, the NLRB argues that the marked voting lists are exempt from disclosure under Exemptions 7(A) and 7(C) of the Freedom of Information Act, 5 U.S.C. § 552. For the following reasons, we disagree and uphold the finding of the district court.

As stated earlier, Exemptions 7(A) and 7(C) exempt from disclosure,

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, ... [or] (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.

5 U.S.C. § 552(b). In finding Exemption 7 inapplicable, the district court stated only as follows: "I have problems with 7 because of its broadness, and I certainly don't think that this is one of those cases which involves a categorical exemption." We agree that Exemption 7 does not apply.

The threshold inquiry is whether the marked voting lists were compiled for "law enforcement purposes." "[T]he Government has the burden of proving the existence of such a compilation for such a purpose." *John Doe Agency v. John Doe Corporation,* 493 U.S. 146, 153, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989). In this case, there is no summary judgment evidence showing that the unredacted voting lists were, in any way, compiled for a law enforcement purpose. Nor do we find any case law which supports a finding that the marked voting lists of union representation proceedings are considered compiled for law enforcement purposes. To hold otherwise would be to stretch the plain language of the statute. Accordingly, we hold that Exemption 7 is inapplicable and we affirm the district court on this issue.

### CONCLUSION

For the foregoing reasons, the order of the district court granting the National Labor Relation Board's cross motion for summary judgment is REVERSED, and this matter is

REMANDED to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.